## CONREY v. BRANDEGEE.

Where the conduct of the principal is calculated to interrupt the friendly relations existing between him and his agent, the latter may terminate his agency, under a full reservation of all his rights. *Per Curiam : Honeste vivere* is part of the law of principal and agent.

Plaintiff. in consideration of being employed as a factor to sell the crop of his principal for a commission, became surety for the latter in a bond executed in certain judicial proceedings. The friendly relations of the parties having been interrupted .through the fault of defendant, plaintiff notified the latter of his desire to terminate his agency, and to have another surety substituted in his place, informing him that unless such substitution was made before a

certain time, he would charge a commission on the amount of the bond on which he was bound as surety. In an action to recover the commission claimed, no other surety having been substituted: *Held*, that plaintiff had no right to insist upon being released from his suretyship, and that, whatever claim he may have resulting from the agreement as to the sale of the crop, defendant was not bound to compensate him for not releasing him.

CONREY
*v.*
BRANDEGEE.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

*Benjamin* and *Micou*, for the appellant. *Roselius*, for the defendant.

The judgment of the court was pronounced by

EUSTIS, C. J. This suit was instituted for the recovery of the sum of $750, being a commission of two and a half per centum on the amount of two bonds, which the plaintiff signed as the surety of the defendant. They were given in a suit pending in the Circuit Court of the United States for this district, and the plaintiff alleges were entered into by him at the special instance and request of the defendant, in consideration of a reasonable compensation by him to be paid for said service, which the plaintiff avers to be 2½ per cent on the amount, and which the defendant agreed and is bound to pay him. The defendant charges, on the other hand, that the signing of the bonds was a mere act of friendship, for which no compensation was ever to be required, and that it was so well understood at the time. There was judgment for the defendant, and the plaintiff has appealed.

We are satisfied that it was understood between these parties that no commission was to be charged by plaintiff for signing the bonds, but that he was to be compensated by having the sale of the defendant's sugar crop. He was the factor of the defendant, and transacted his busines in the city. Their business relations were terminated by a communication from the plaintiff to the defendant to that effect, which also contained a request that some other name should be substituted for his on the bonds in the United States court. The plaintiff also notified the defendant that, unless he was released from his bonds within a certain time, he would charge him the commission of 2½ per cent, for signing the bonds.

It was considered by the judge of the Commercial Court, before whom this cause was tried, and it has been maintained in argument, that their business relations were brought to a close at the instance of the plaintiff himself, and that he must take the consequences of their termination. But the evidence satisfies us that their termination must be considered as resulting from their mutual consent, but that the cause was the conduct of the defendant in his relations with the plaintiff. *Honeste vivere* is part of the law of principal and agent, and, after the demeanor of the defendant in the office of the plaintiff, there was nothing in the condition of the defendant's business under the gestion of the plaintiff, which prevented him from closing his agency, under the full reservation of his rights.*

---

*The evidence in relation to this conduct, is as follows; *Moise*, a book keeper employed by *Conrey*, testified: "That he met *Brandegee* at the post-office, who saluted him with the expression, "*I'm going to kick*," or "*tell Peter I'm going to kick*," and witness reported the expression to *Conrey*. Afterwards *Brandegee* came to the office, and used some similar expressions to *Conrey*, to which *Conrey* immediately replied in an emphatic and decided manner, but with politeness, that *Brandegee* might get some body else to attend to his business. *Brandegee* seemed immediately to recede, and things went on as if that expression had not been heard, and the parties continued to transact business for some days after. Their ceasing to do business together, was caused by *Brandegee's* failing to furnish for *Conrey's* office [which was rented from him,] such a stove as he had promised to supply, and refusing to pay for one furnished by *Conrey*. It appeared that both parties were willing that their doing business together as principal and factor should cease."

Pothier considers that the revocation of a mandate may be presumed, "lorsqu'il est survenu de grandes inimitiés entre le mandant et le mandataire." Brunneman is cited by him in support of this opinion.   Contrat de Mandat, § 120. But had the plaintiff a right to insist on being released from his suretyship ?   For if the defendant was bound to release him, he ought to compensate him, *ex æquo et bono*, for holding him to it after the formal notice, and against his consent.   In the progress of the suit in chancery in which the bonds were given it might become necessary, for the furtherance of justice, to remove the disability under which the surety might labor, and the court would, in such a case, authorize the substitution of another in his stead ; but, as we are at present advised, this is the only case in which a solvent surety would be discharged from a judicial suretyship, unless perhaps by depositing the whole amount of the bonds, under article 3034 of the Code.   This it would be unreasonable to insist upon.

When a debt is due, equity will relieve the surety, and compel the principal debtor to pay the debt and release the surety.   But until the debt is due, or the debtor has made default, and where there are no allegations of danger of loss to the surety by the insolvency or condition of the principal debtor, courts have always refused to compel the debtor to exonerate the surety by depositing the money.   Such has been the uniform decision of courts of equity,

The Court of Sessions of Scotland approved an interlocutory decree of Lord Jeffrey, who held, in a case similar to this, that it was contrary to the *bona fides* of a contract of suretyship, to maintain such a demand on the part of a surety for instant and total relief.   Erskine's Institute of the law of Scotland, 721, note.   Vide also, case of *Calvert* v. *Gordon*, 3 Manning and Ryland, R. 124.

The plaintiff required from the defendant to release him from his suretyship. The learned judge who tried this cause considered it was not in the power of the party to comply with this demand.   He was clearly right, except by a means which the surety had no right to insist upon.   The Spanish law authorized the *release* of the surety in certain cases.   *Partida* 5, tit. 12. *law* 14.   Our Code does not seem to contemplate a release of the suretyship, but provides expressly for *indemnifying* the surety in certain cases: 1st. when there exists a law suit against him for payment; 2d, when the debtor is insolvent, or has become a bankrupt; 3d, when the debtor was bound to discharge him within a certain time; 4th, when the debt has become due by the expiration of the term; 5th, after the lapse of ten years when the principal obligation is of a nature to last a longer time, unless it is not to expire before a determinate period, as a curatorship, &c.   The plaintiff has not made out a case in which he would be entitled to ask even an indemnity from the defendant against his suretyship, which, by its conditions, was to endure until terminated by the action of the court.

The defendant, not being bound to release the plaintiff from his bonds on his notice and requisition, the latter can have no claim for compensation for continuing his suretyship.   The contract must be considered as entire, and resting upon its original consideration.   It was understood that no commission was to be charged, and we can allow none.   What claims the plaintiff may have against the defendant, growing out of the understanding concerning the sale of the sugar crop of the defendant, it is unnecessary to consider, as they are not before us.

The interruption of the friendly relations between these parties, cannot affect in any manner their obligations touching the suretyship.   Gregorio Lopez in-

clines to the opinion that the creditor had his remedy for relief. "Quando intervenit inimicitia capitalis, culpâ debitoris, et satis æqua videtur ista opinio." *Partida*, 5. *tit.* 12, *law* 14, *Gloss.* Henrys, in his treatise *Des Cautions*, § 391, says: "La caution se peut encore faire décharger, si entre elle et le debiteur il est intervenu quelqu' inimitié capitale;" and he cites in support of his opinion, *Runchin in quæst* 117, *Gruy Pape* and *Charondas.*

Modern authorities, however, as well as our Code, have not considered this as one of the reasons for which a surety can apply to a court for relief; nor does *.our Code* enumerate it, as a circumstance from which the revocation of a mandate may be presumed. But the mutual relations between principal and factor impose on parties, in order to give them effect, a reasonable degree of decency in their intercourse with each other; these relations imply a series of acts, and a communication between the agent and his principal on the business entrusted to him. Suretyship is one act, and implies no necessary communication between the parties after it is once entered into.

*Judgment affirmed.*